UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.N., a minor by and through his guardian ad litem Elizabeth Neel,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>                              Defendants. | Case No.: 17cv1583-L-BGS<br><br>**ORDER DENYING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT** |

      Pending before the Court in this action alleging personal injuries to a minor at Marine Corps Air Station Miramar Child Care Development Center ("CDC") is a motion for summary judgment filed by Defendant the United States ("government"). Plaintiff, a minor represented by his mother as guardian ad litem, filed an opposition. The government replied. For the reasons which follow, the government's motion is denied.

**I.    BACKGROUND**

      Plaintiff, who was enrolled at CDC, was injured twice in two months, suffering a broken finger and a broken leg. He filed this action under the Federal Tort Claims Act, 28 U.S.C. §§2670-2680, 1346(b) ("FTCA"), alleging that his injuries were caused by Defendants' negligence. The Court has subject matter jurisdiction under 28 U.S.C. §1346(b).

1

In its summary judgment motion the government contends that Plaintiff's claims are barred by the Hold Harmless Release ("Release") included in the CDC's registration papers which Plaintiff's parents had signed. (Joint Separate Statement of Undisputed facts (doc. no. 25 ("Joint Statement")) ¶7.) Signing the Release was required of all parents to enroll their children in the CDC. (*Id.*)

The parties disagree whether the Release is enforceable. Plaintiff contends it is not because the government had waived this defense and, alternatively, because it is unenforceable under California law. The government counters that California law does not apply and that the Release is enforceable under federal law.

## II. DISCUSSION

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, or parts thereof, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323. If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor.

/ / / / /

2
17cv1583-L-BGS

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The facts relevant to the government's motion are undisputed.

**A. <u>Waiver</u>**

Initially, Plaintiff argues that the government's motion should be denied because it has forfeited release as an affirmative defense. An affirmative defense is forfeited unless asserted in the answer to the complaint. *In re Cellular 101, Inc. (Lowery v. Channel Comm'ctns, Inc.),* 539 F.3d 1150, 1155 & n.2 (9th Cir. 2008); *In re Adbox, Inc. (Metcalf v. Golden),* 488 F.3d 836, 841 (9th Cir. 2007). Rule 8(c) expressly requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . release . . .." Consistently, Rule 12(b) requires that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading," except certain enumerated defenses which do not include release.

The government does not deny that it failed to plead release in the answer (*see* Answer (doc. no. 5)), but counters that its defense should not be forfeited because Plaintiff suffered no prejudice, as the defense had been discussed between counsel and they had conducted discovery on the issue. (Reply (doc. no. 23) at 3 n.1.)[1] Although the defendant is required to timely raise affirmative defenses in the answer, "'an affirmative defense may be raised for the first time at summary judgment'" if the plaintiff is not prejudiced. *Garcia v. Salvation Army,* 918 F.3d 997, 1008 (9th Cir. 2019) (quoting *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir. 1993)). In order to preclude the application of the untimely asserted affirmative defense, "a party must point to a tangible way in which it was prejudiced by the delay." *Garcia,* 998 F.3d at 1009 (internal quotation marks and citation omitted). As Plaintiff does not contend he was prejudiced by the government's delay in asserting release, the government's failure to raise it in the answer does not bar its summary judgment motion.

---

[1] Page number references are as assigned by the electronic case filing system.

**B.  Release**

The government argues that Plaintiff's claims are barred by the Release. Plaintiff counters that the Release is unenforceable under California law.

**1. Choice of Law**

The parties disagree whether federal or California law applies to the Release. Plaintiff relies on *Air Transportation Associates v. United States,* 221 F.2d 467 (9th Cir. 1955), for the proposition that California law applies to determine whether the Release provides a valid defense to his negligence claim. In *Air Transportation* the plaintiff's airplane was damaged at a military airfield due to the government's negligence. 221 F.2d at 469. The plaintiff filed an action for damages under the FTCA. *Id.* at 470-71. The government, as here, defended by pointing to a release for the plaintiff's use of the airfield. *See od.* at 469. The Court relied on 28 U.S.C. § 2674, which provides for government liability under the FTCA in pertinent part as follows: "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . .." The Court held that the same principle applied to the validity of the release:

> The Federal Tort Claims Act specifically adopts the law of the place where an accident occurs as the law in accordance with which liability is to be determined. This adoption of the proper state law applies not only as to the creation of liability but also as to release from liability.

*Id.* at 471 (citations omitted). It went on to consider whether the release was a valid defense under state law. *Id.* at 472-73. Under *Air Transportation,* California law determines whether Plaintiff's claims are barred by the Release.

The government counters that subsequent case law makes clear that federal law applies to bar the released claims. The subsequent cases cited by the government do not contradict *Air Transportation* and support the government's contention only insofar as federal law controls contract interpretation.

/ / / / /

*United States v. Seckinger,* 397 U.S. 203 (1970), arises from an FTCA action filed by a government contractor's employee against the government for personal injury caused by the government's negligent maintenance of the work site. *Id.* at 204-05. The court found the government liable under the FTCA and awarded damages. *Id.* at 205. *Seckinger* is the action the government subsequently filed against the contractor under an indemnity clause of their contract, seeking indemnity for the judgment in the FTCA action. *Id.* at 206. The issue decided in *Seckinger* was whether the indemnity clause could be interpreted to shift all of government liability to the contractor. *Id.* In ultimately reaching the decision that the clause allocated liability based on comparative negligence principles, the Court noted, "Preliminarily we agree . . . that federal law controls the interpretation of the contract." *Id.* at 209. The government seizes on the latter statement to argue that the effect of the Release on Plaintiff's claims must be decided under federal law. *Seckinger* interpreted the indemnity clause under federal law. The choice of law issue relating to defense from liability was neither raised nor decided in *Seckinger*. *Seckinger* was not an FTCA action filed by a claimant against the government, but the government's action against a contractor to enforce an indemnity contract. Accordingly, *Seckinger* supports the government's argument only insofar as federal law applies to interpret a federal government contract.

The government also relies on *Schwarder v. United States,* 974 F.2d 1118 (9th Cir. 1992), which arises from a medical malpractice claim filed by a Veterans Administration patient against the government under the FTCA. *Id.* at 1120. The government and the patient entered into a settlement agreement which included a release as provided by the FTCA, 28 U.S.C. 2672, for adjustment of claims. *Id.* The patient later died. Subsequently, his children sued the government under the FTCA alleging wrongful death. *Id.* at 1121. The government defended by arguing that the settlement release barred the wrongful death action. *Id.* at 1122.

In deciding whether the release provided a valid defense, the Court engaged in a two-step analysis. It first noted that interpretation of the release under 28 U.S.C. § 2672

5

is a matter of federal law. *Id.* at 1123 ("In essence, the government argues that the meaning of a release of liability under section 2672 of the FTCA is a question of federal, rather than state, law. Our interpretation of section 2672 is, of course, initially a matter of federal law.") The Court concluded that under the plain language of section 2672,[2] the release applied only to the settling parties. *Id.* at 1122-23. Second, the Court looked to state law as required by section 2674:

> Some provisions of the FTCA, however, incorporate state law. See, e.g., 28 U.S.C. § 2674. We must determine to what extent Congress intended to make the effect of a section 2672 settlement dependent upon state law.

*Id.* at 1123.

Citing *Air Transport*, the Court concluded that once the release is interpreted under federal law, its effect on the tort claim is governed by state law. *Id.* at 1124.

> We conclude, as a matter of federal law, that an administrative settlement reached pursuant to section 2672 bars further claims by the settling party, without regard to the effect it would have as a matter of state law. . . .
>
> However, we are persuaded that section 2672 does not directly control the effect of a settlement on persons other than the settling party. . . . With respect to the claims of other persons, a section 2672 settlement has the same effect as any other release: it is a relevant circumstance which must be taken into account in determining whether the United States is liable under state law.
>
> We hold, therefore, that state law governs the question of the effect of a section 2672 release on the claims of persons other than the settling

---

[2] The settlement agreement tracked the language of section 2672, which provides in relevant part:
> The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.

*Cf. Schwarder,* 974 F.2d at 1120 (release).

claimant. Congress plainly intended to define the contours of a "tort claim" by reference to state law. See 28 U.S.C. § 2674. . . .

*Id.*

Accordingly, in an FTCA case, where, as here, the government relies on a federal contract provision for its defense,[3] federal law applies to interpret the contract provision. *See Schwarder,* 974 F.2d at 1123; *see also Kennewick Irrig. Dist.,* 880 F.2d at 1032. However, state law determines whether the contract provision bars liability for the tort claim. *See Schwarder,* 974 F.2d at 1123 (citing 28 U.S.C. § 2674); *see also Fort Vancouver Plywood Co. v. U.S.,* 747 F.2d 547, 553 (9th Cir. 1984), *abrogated on other grounds by DaVinci Aircraft, Inc. v. U.S.*, __ F.3d __, 2019 WL2439691 (9th Cir. Jun. 12, 2019).

## 2. Contract Interpretation

Plaintiff does not dispute that the contract, including the Release, was entered into pursuant to authority conferred by federal law. *See* 5 U.S.C. §301; Dep't of the Navy, OPNAV Instr. 1700.9E (Child and Youth Program).[4] Its interpretation is governed by federal common law "fashioned from general principles of contract interpretation." *Harrison W. Corp. v. U.S.,* 792 F.2d 1391, 1393 (9th Cir. 1986) (citations omitted).

> A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first. The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if
> / / / / /

---

[3] "The government may, of course assert a contractual defense in a tort action under the FTCA." *Kennewick Irrig. Dist. v. U.S.,* 880 F.2d 1018, 1032 (9th Cir. 1989) (as amended Aug. 28 and Oct. 23, 1989).

[4] *See* Gov't Exs. A, B (doc. no. 21-2).

7

reasonable people could find its terms susceptible to more than one interpretation.

*Klamath Water Users Protective Assoc. v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 2000).

The Release provides in relevant part:

> I agree to release and hold harmless the United States, its officers, its agents, and its instrumentalities, against any claims . . . arising out of, claimed on account of, or in any manner predicated upon his/her participation in any [Children and Youth Program] activity, use of facilities and/or equipment including any . . . injury or death of any person, in any manner, caused or contributed to by the United States, its officers, its agents, or its instrumentalities.

(Gov't Ex. B at 13.) Plaintiff contends that the Release is ambiguous because it does not clearly define who it refers to. While Plaintiff is correct that the Release does not refer to Plaintiff by name, Plaintiff is identified by name elsewhere in the contract, and the fact that the Release refers to Plaintiff rather than "any person in the world" (Opp'n (doc. no.22) at 23) is apparent from the context of the contract as a whole. (*See* Gov't Ex. B at 13.) Construed according to its plain meaning, the Release unambiguously states that the government is released from liability for Plaintiff's injuries.

### 3. Release as Affirmative Defense

Under the FTCA state law applies to the issue of liability. 28 U.S.C. §2674; *see also Schwarder,* 974 F.2d at 1123, 1124; *Air Transp. Assoc.,* 221 F.2d at 471. Relying on *United States v. Kimbell Foods, Inc.,* 440 U.S. 715 (1979), and *Woodbury v. United States,* 313 F.2d 291 (9th Cir. 1963), the government counters by arguing that federal law applies because the Release should be uniformly enforced. (Mot. at 15; Reply at 8-9.) Neither case supports the government's position.

In *Woodbury* the Court found that the plaintiff's claim, although pled as a tort, depended entirely on proof of the government's breach of contract, and therefore did not fall under the FTCA. 313 F.2d at 295-96. In this regard, it distinguished claims which depend entirely on the breach of a government contract, which are adjudicated under the

8

Tucker Act, and tort claims where, as here, a government contract is asserted only as a defense, which are adjudicated under the FTCA. *Id.* at 296. The Court acknowledged that state law applies under the FTCA. *Id.* at 295. *Woodbury* supports Plaintiff's position that state law decides the government's liability in light of the Release.

*Kimbell Foods* did not involve the FTCA, but considered if, in the absence of a federal statute setting lien priorities, state or federal law should control priority between private liens and government liens. 440 U.S. at 718. The government liens at issue were created to secure loans guaranteed or extended by the federal Small Business Administration and the Farmers Home Administration, respectively. *Id.* at 718-26. The Court noted that the issue whether state or federal law should apply arises only "absent a congressional directive." *Id.* at 740; *see also id.* at 726 ("[i]n the absence of an applicable Act of Congress"), 727 ("Congress has not spoken"). Although no federal statute specified the appropriate rule of decision, and after considering the government's numerous arguments for uniformity in enforcement, the Court "decline[d] to override intricate state laws of general applicability." *Id.* at 729; *see also id.* at 740. Unlike in *Kimbell Foods*, here the Court need not engage in the weighing of the government's reasons for uniformity, as federal law provides the rule of decision. The FTCA directs federal courts to apply state law to determine government tort liability. 28 U.S.C. § 2674.

California law provides that child care center releases are unenforceable. *Gavin v. YMCA of Metropolitan Los Angeles,* 106 Cal. App. 4th 662 (2003). Accordingly, the government's summary judgment motion is denied.

**IT IS SO ORDERED.**

Dated: June 20, 2019

_____
Hon. M. James Lorenz
United States District Judge